# IN THE COURT OF APPEALS OF IOWA

No. 24-1979
Filed May 7, 2025

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**D.L., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.

A mother contests the termination of her parental rights to her thirteen-year-old daughter. **AFFIRMED.**

Phillip D. Seidl of Seidl & Seidl, P.L.C., Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Annette F. Martin, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

Thirteen-year-old A.B. enjoys a strong bond with her mother, but—as her guardian ad litem (GAL) reported—the teenager "recognizes that her parents are not equipped to care for her and provide the guidance she needs to transition into adulthood." The juvenile court relied on the GAL's assessment in terminating parental rights. Only the mother, Delinda, appeals. She argues that the juvenile court erred in finding the State made reasonable efforts toward reunification. Delinda also contests the ground for termination, contends that termination was not in A.B.'s best interests, and argues that the court should have found it was reasonable to believe that A.B. could return home in six months .

Because Delinda was offered appropriate services and did not choose to engage until the eve of termination, we reject her reasonable-efforts claim. We also find that the State offered clear and convincing evidence that A.B. could not be safely returned to her mother's care. *See* Iowa Code § 232.116(1)(f) (2024). In fact, at the termination hearing, Delinda only asked for more time to work toward reunification with her daughter. As for more time, we agree with the district court that deferring permanency was not in A.B.'s best interests. Thus, we affirm the termination order.

## I.      Facts and Prior Proceedings

This child-welfare case centers on the mother's involvement with methamphetamine. To start, Delinda was found in possession of methamphetamine during a traffic stop in May 2022; she also tested positive for the drug at that time. In response, the Iowa Department of Health and Human Services developed a safety plan for Delinda and her two daughters—A.B., then

eleven, and M.M., then fifteen—to move in with the maternal grandparents. The plan placed A.B. in the care of the grandparents, who agreed not to leave the mother unsupervised with her.

But when Delinda again tested positive for methamphetamine in July 2022, the State petitioned to have A.B. and M.M. adjudicated as children in need of assistance (CINA). A.B. remained in the grandparents' care under a revised safety plan.[1] At the adjudication hearing, Delinda testified that she used when she learned that her forgery charges were reduced from felonies to misdemeanors because it was a "weight lifted off [her] shoulders." In granting the State's CINA petition, the court noted: "This is an irrational response to a favorable outcome, and a response that could have brought additional criminal charges."

As the juvenile court eloquently described, the first year of the CINA case was marked by "inaction" and "heartbreak." The heartbreak resulted from the deaths of the mother's stepbrother in February and her stepfather in July 2023. As the court observed: "These events were devastating to Delinda. Delinda began to use methamphetamine more consistently while attempting to process her grief."

As for inaction, the mother made no progress toward the case goals. She did not complete a mental-health evaluation. She did not complete the intensive substance-use treatment recommended early in the case. She also failed to participate in drug testing—missing eight tests in three months. Throughout the

---

[1] Under that safety plan, the mother agreed not to use methamphetamine in the grandparents' home and if she did use, she would not return to the home for seventy-two hours. In the termination ruling, the juvenile court questioned the wisdom of that safety plan, regretting the decision not to remove A.B. from her mother's custody earlier.

CINA case, the department offered forty-six drug tests; the mother participated in six. All six tests were positive for methamphetamine.

Delinda also faced eviction after her stepfather's death. In the wake of that housing instability, a child protection worker found A.B. and Delinda were staying in the mobile home of a registered sex offender in August 2023. Delinda maintained that the owner was not a sex offender and remained in the home despite the worker's concerns.

Given those developments, the State sought to remove A.B. from parental custody. At the removal hearing, Delinda admitted actively using methamphetamine to cope with the loss of her stepfather and brother. She also acknowledged needing treatment for substance use and mental health. After the removal, A.B. lived with her paternal grandparents. But that arrangement changed in December 2023 when the department moved A.B. to the foster home where M.M. was living.[2] The sisters fared well in the foster home. The GAL reported that A.B. was a "happy, bubbly girl" in that placement.

To facilitate reunification, the foster mother repeatedly invited Delinda for visits with the girls, but Delinda "was not able to make any of these visits happen," according to a report from the Court Appointed Special Advocate (CASA). That inconsistency in visitation was a pattern for the mother. The department offered her forty-nine visits with A.B., and she only participated in seventeen.

---

[2] The department made the move because the grandmother allowed her son unauthorized time with A.B. and did not support A.B.'s relationship with M.M.

The mother did take some positive steps late in the case. For instance, in July 2024, the mother completed a mental-health evaluation and started treatment. But she did not have regular employment or stable housing.

In August 2024, the State petitioned to terminate the mother's parental rights to A.B. and her older sister, M.M.[3] After an October hearing, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(f). She now appeals.[4]

## II.    Analysis

Termination review generally follows three steps: (1) did the State prove a statutory ground for termination under Iowa Code section 232.116(1); (2) was termination in the child's best interests under section 232.116(2); and (3) should the court apply a permissive exception under section 232.116(3) to preclude termination? *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We address only those steps raised by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). And after addressing the challenged steps, we tackle any other claims raised. *In re L.A.*, ___ N.W.3d ___, ___, 2025 WL 855764, at *1 (Iowa Ct. App. 2025).

---

[3] Before the termination hearing, M.M.—who was just shy of her eighteenth birthday—told the department social worker that she preferred to age out of the foster-care system rather than lose the legal connection with her parents. So the State limited its petition to A.B.

[4] We review her claims de novo, "examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). The juvenile court's factual findings do not bind us, but we give them weight, especially when deciding whether to believe a witness. *Id.*

**A. Statutory Ground and Deferred Permanency**

The mother contends that the State failed to prove the statutory ground for termination under section 232.116(1)(f). In her petition on appeal, she asserts the State did not offer clear and convincing evidence for subparagraph (4)—that A.B. could not be returned to her custody at the present time without risk of harm. *See* Iowa Code § 232.116(1)(f)(4). In her petition on appeal, she insists that she has "the ability and willingness to respond to services." She notes that before the termination hearing she completed mental-health and substance-use evaluations and was participating in outpatient treatment. She also highlights that she was again participating in drug testing—though a recent test was positive for methamphetamine.

Granted, Delinda started moving in the right direction as the termination trial loomed. But she recognized that she needed more time to prepare for a safe reunification with A.B. At the trial, her attorney inquired: "what are you going to be asking the court to do today?" Delinda responded: "If they would be willing to give me three months to show that I can—so I can prove to them that I can do everything that they are asking." That request for more time undermines her challenge to subparagraph (4) of section 232.116(1)(f). That element requires "clear and convincing evidence that *at the present time* the child cannot be returned to the custody of the child's parents as provided in section 232.102." *Id.* (emphasis added). We interpret "at the present time" to mean "at the time of the termination hearing." *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024). Thus, we reject her challenge to the statutory ground for termination.

As for more time, we are persuaded by the county attorney's argument at the termination trial that deferring permanency is not in A.B.'s best interests:

> This case has been open since April of 2022. There's nothing to indicate that that additional time will have any different changes. I believe we will continue to see the cycle of use and addiction that we've seen from the beginning of this case.
> I understand and appreciate that Delinda has been through a lot in her life and probably more than anybody in this room has, but the focus of today is not what is in her best interests, it's what's in the best interests of [A.B.].

Delinda must show not only that the impediments to placing A.B. with her will not exist in six months, *see* Iowa Code section 232.104(2)(b), but also that the further delay is in A.B.'s best interests. *See* Iowa Code § 232.116(2); *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). She can't meet that burden. Despite Delinda's recent increase in engagement with services, she has continued to test positive for methamphetamine. She also lacked stable housing for her and A.B. And she did not appreciate that living in the home of a registered sex offender hindered reunification. Under these circumstances, we find deferring permanency was not in A.B.'s best interests.

## B. Best Interests and Permissive Exception

Having decided that the State proved a statutory ground for termination and the proposed delay was unwarranted, we must still examine whether severing legal ties with her mother is in A.B.'s best interests. *See R.M.-V.*, 13 N.W.3d at 626. In deciding what is in A.B.'s best interests, we consider the child's safety, the best placement for furthering her long-term nurturing and growth, and her physical, mental, and emotional condition and needs. *See P.L.*, 778 N.W.2d at 39 (discussing Iowa Code section 232.116(2)).

In her petition on appeal, Delinda claims termination was not in A.B.'s best interests. But rather than addressing the framework under section 232.116(2), Delinda discusses her bond with A.B., citing the permissive exception at section 232.116(3)(c) to avoid termination. "Conflating the second and third steps based on a claimed bond with the child is not uncommon." *L.A.*, __ N.W.3d at ___, 2025 WL 855764, at *3. And we can consider any claimed bond between the child and parent as part of the best-interest analysis. *Id.*

Yet here, because Delinda invokes only section 232.116(3)(c), we limit our analysis to that permissive exception. Under that provision, "The court need not terminate the relationship between the parent and child if . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Delinda has the burden to show that detriment. *R.M.-V.*, 13 N.W.3d at 626–27. We assess whether the harm the child suffers because of the termination outweighs the parent's inability to provide for the child's needs. *Id.*

Delinda points to the CASA's view that she has a strong bond with A.B. as a reason not to terminate her parental rights.[5] We agree the record shows that Delinda has a close relationship with her daughter. But the mother has not shown that termination will disadvantage A.B. The mother "has failed over several years

---

[5] Without setting out a separate issue, Delinda mentions in passing that "[g]iven that A.B.'s closest sibling, M.M., was aging out rather than have parental rights terminated, certainly guardianship would be a more reasonable alternative." Such an undeveloped assertion does not merit review. *See State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (explaining random mention of an issue, without elaboration or supporting authority, is not enough to prompt an appellate court's consideration).

to address her methamphetamine use." *See id.* at 627. And her "continued inability to place herself in a position to parent [A.B.] weighs against the application of an exception." *See id.*

### C. Reasonable Efforts

The mother also argues that the department failed to make reasonable efforts to achieve reunification.[6] She acknowledges that the department may have fashioned the original safety plan to leverage her family support. But she asserts "the situation was rather fragile as two of the household members were dying and required [her] care." So in her view, the plan "ultimately accelerated removal of the children when [she] was overwhelmed and could not escape relapse."

We begin with the statutory definition of "reasonable efforts." They include "the efforts . . . to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102A(1)(a). The department must "make every reasonable effort" to return children to their family homes as soon as possible consistent with their best interests. *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000).

We are not persuaded by the mother's attack on the safety plan as undermining reasonable efforts. As the juvenile court noted, the "wisdom" of that plan "can be debated." But the department's attempts to avoid A.B.'s removal were not a denial of reasonable efforts. The department offered ample services, which

---

[6] The State questions whether the mother challenged the services in the juvenile court. But because the juvenile court addressed this issue in its termination order, we choose to bypass any error preservation concerns.

the mother failed to access until very late in the CINA case.  We reject her reasonable-efforts challenge.

**AFFIRMED.**